

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| GARY LONG, JR., | * | CIV 13-1012 |
| | * | |
| Petitioner, | * | |
| | * | OPINION AND ORDER |
| -vs- | * | DENYING MOTION TO VACATE |
| | * | AND ORDER DENYING |
| UNITED STATES OF AMERICA, | * | CERTIFICATE OF APPEALABILITY |
| | * | |
| Respondent. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Gary Long, Jr. was convicted of aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(a)(1) and 2246(2)(A). At the date of the petitioner's offense he was fifteen years old. On October 9, 2001, a three-count charge was filed in the District of South Dakota, Northern Division. The charges were kidnaping, in violation of 18 U.S.C. §§ 5032, 1153 and 1201; second degree larceny, in violation of 18 U.S.C. §§ 5032, 1153, and 661; and burglary, in violation of 18 U.S.C. § 1153 and SDCL 22-32-3. A warrant was subsequently issued for the defendant's arrest. He made his initial appearance on the same day in the District of North Dakota in Bismarck, ND. At that hearing, he waived a removal hearing and was detained pending his initial appearance in the District of South Dakota. On October 12, 2001, the defendant appeared in the District of South Dakota, Northern Division, in Aberdeen, SD, for an initial appearance and was detained pending further hearings. On December 19, 2001, a transfer hearing was held before U.S. District Judge Charles B. Kornmann in Pierre, SD. On December 31, 2001, the Court rendered a decision to transfer the defendant to adult court. The defendant timely appealed the transfer. On July 16, 2002, the United States Court of Appeals for the Eighth Circuit rendered an opinion affirming the district court's decision to transfer the defendant to adult court. On July 24, 2002, a four-count indictment was filed charging the defendant with kidnaping, in violation of 18 U.S.C. §§ 5032, 1153, and 1201; aggravated sexual

abuse, in violation of 18 U.S.C. §§ 2241(a)(1) and 2246(2)(A); first degree burglary, in violation of 18 U.S.C. § 1153 and SDCL 22-32-3; and larceny, in violation of 18 U.S.C. §§ 1153 and SDCL 22-32-3. The defendant pleaded guilty to Count II of the indictment on December 13, 2002. The indictment charged as follows:

> On or about the 4th day of October, 2001, in McLaughlin, in Indian country, in the District of South Dakota, the defendant, an Indian, did knowingly cause and attempt to cause Ivy Archambault, to engage in a sexual act, that is contact between the penis and the vulva, by using force against her person, in violation of 18 U.S.C. §§ 1153, 2241(a)(1), and 2246(2)(A).

The defendant was sentenced on April 14, 2003, to 540 months imprisonment pursuant to a guidelines range for aggravated sexual abuse, found at USSG §2A3.1, which contains a cross-reference to USSG §2A1.1 (first degree murder) if a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States. The factual basis statement, which the defendant signed, stated that he participated in the murder of the victim shortly after she was raped. Therefore, the cross-reference was applied. The factual basis statement was signed by the defendant as part of his plea agreement with the government. Prior to sentencing the defendant, the Court stated that "the idea is that the defendant is to remain in custody until his 60th birthday." (CR-01-10021 Doc. 97 at 3). Defendant/Petitioner did not appeal from that judgment nor did he file any previous petitions pursuant to 28 U.S.C. § 2255. The petitioner now submits a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. He is challenging his sentence, arguing that it was unconstitutional under the Eighth Amendment's Cruel and Unusual Punishments Clause.

## OPINION

The U.S. Sentencing Commission has stated that for federal sentencing purposes 470 months is "functionally equivalent" to life. The Commission revised its statistical methodology to "reflect life expectance of federal criminal defendants more precisely" by

2

capping the sentences tracked at 470 months. U.S. Sentencing Commission, 2011 Sourcebook of Federal Sentencing Statistics, Appendix A, at 2. The Commission's determination that 470 months is the "functional equivalent" of a life sentence is also expressed in its Variable Codebook for Individual Offenders with mathematic simplicity: "470 = Life Sentence." U. S. Sentencing Commission, Variable Codebook for Individual Offender, at 36, 40, 41, 45 *available at* http://www.ussc.gov/Research_and_Statistics/ Datafiles/Variable_Codebook_for_Individual_Offenders.pdf (last visited on March 25, 2014). Accordingly, because the petitioner in the instant case was sentenced to 540 months in prison, his sentence is "functionally equivalent" to a life sentence.

The petitioner seeks relief because he was sentenced when he was a juvenile. The last few decades of Supreme Court decisions have extended greater Eighth Amendment protection to juvenile offenders than to adult offenders. The trend began with Thompson v. Oklahoma, 487 U.S. 815, 108 S. Ct. 2687, 101 L. Ed. 2d 702 (1988), in which William Thompson challenged a death sentence pronounced for his first-degree murder conviction, which stemmed from active participation in a "brutal murder" at the age of fifteen. Id. at 819. The Court held that, regardless of the underlying crime, the death penalty violated the Eighth Amendment's prohibition on cruel and unusual punishments when applied against an offender under the age of sixteen. Two decades later, relying on similar rationales concerning the developmental differences between children and adults, the Supreme Court expanded the prohibition on death sentences for children to include all juveniles under the age of eighteen. Roper v. Simmons, 543 U.S. 551, 556-60, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005).

In Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L. Ed. 2d 825 (2010), Graham was sixteen when he committed an armed burglary and another crime. Id. at 53. After his conviction, the trial court adjudicated Graham guilty and sentenced him to life in prison for the burglary. Id. Graham subsequently challenged his sentence, arguing that it was unconstitutional under the Eighth Amendment's Cruel and Unusual Punishments Clause. Id. at 58. The Supreme Court agreed with Graham. Id. at 82. The core holding

3

of Graham is that a juvenile offender cannot constitutionally be sentenced to life in prison without parole for a non-homicide crime. Id. In reaching its decision, the court relied on its own precedent which established that "because juveniles have lessened culpability they are less deserving of the most severe punishments." Id. at 68, *quoting* Roper v. Simmons, 543 U.S. 551, 569 (2005). The court further noted that, "[a]s compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." Id. *citing* Roper, 543 U.S. 569-70, *quoting* Johnson v. Texas, 509 U.S. 350, 367 (1993) (internal quotations omitted). Finally, the court found significant the fact that "[i]t remains true that '[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed.'" Id. at 68 (citation omitted).

Graham outlines various theories behind sentencing practices in the justice system. The core justifications of incarceration are straightforward and an individual convicted and sentenced for violation of the law is placed into custody for four major reasons: 1) retribution, 2) deterrence, 3) incapacitation and 4) rehabilitation. Graham 71-74. The opinion examines penological theory as it is applied to juvenile non-homicide offenders sentenced to life without parole. Id. at 74. The Graham opinion states: "In sum, penological theory is not adequate to justify life without parole for juvenile non-homicide offenders. This determination; the limited culpability of juvenile non-homicide offenders; and the severity of life without parole sentences all lead to the conclusion that the sentencing practice under consideration is cruel and unusual." Id.

In Miller v. Alabama, 132 S. Ct. 2455 (2012), the petitioners were convicted of murder and sentenced to a mandatory term of life imprisonment without the possibility of parole. Id. at 2461. Both petitioners challenged their sentences, alleging the sentences violated the Eighth Amendment's ban on cruel and unusual punishments. The Supreme Court agreed with the challenge, expanded the rule set forth in Graham, and held that the

4

Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile homicide offenders. Miller at 2475. Mr. Long's sentence in the instant case was administered prior to the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Therefore, his sentence was mandatory in the absence of a legal and factual basis for a downward departure. Booker effectively changed federal sentencing guidelines from mandatory to advisory.

The petitioner's motion under 28 U.S.C. § 2455 warrants a thorough analysis in light of these cases. Supreme Court precedent has widened the scope to include the petitioner's complex sentencing scheme. Although the petitioner pleaded guilty to aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(a)(1) and 2246(2)(A), his sentencing range reflected the stipulation that a homicide had occurred. This was part of the petitioner's plea agreement with the government. His guidelines range calculation was augmented by cross-referencing his conviction for aggravated sexual abuse, his "offense of conviction," with homicide crime penalties, his "real offense conduct," in spite of the fact that the petitioner was not convicted of a homicide offense. Petitioner received a sentence of 540 months in federal custody and the U.S. Sentencing Commission has stated that any sentence exceeding 470 months is "functionally equivalent" to a life sentence.

The instant case must be distinguished, however, from other cases that have been decided in favor of expanded Eighth Amendment protection for juvenile offenders. It must be noted that the Supreme Court's decisions creating a bar on life without parole sentences for juvenile offenders only addressed defendants in state court proceedings who received an actual life sentence, not its mathematical "functional equivalent." Mr. Long has been sentenced to federal custody for a length of years but not for the rest of his life, as the term "life sentence" is commonly understood. While the U.S. Sentencing Commission has determined that a sentence greater than 470 months is "functionally equivalent" to a life sentence and may even call it a life sentence, it is not *substantively*

5

*equivalent* to a life sentence. Therefore, although the petitioner's sentence was mandatory under the Federal Sentencing Guidelines, relief should not be granted using the same meaning of a life sentence as was used in the context of Miller. The Miller opinion understood a life sentence to reflect its meaning in plain language, i.e., the remainder of one's lifetime spent in custody. In the context of this plain language definition, Miller found an Eighth Amendment violation "reflecting a concern with proportional punishment." Id. at 2458.

Counsel for petitioner attempts to use the logic of transitive relation to classify petitioner's sentence as a "life without parole" sentence in violation of the Eighth Amendment. The principle of transitive relation can be easily understood using basic mathematics. Simply:  $a = b$  and  $b = c$ ; therefore,  $a = c$ . While this is mathematically true, it can and does often lead to semantic inaccuracies. A life without parole sentence (as understood in a Miller context) keeps the inmate in custody for the duration of the inmate's life. While a term sentence exceeding 470 months has been determined "functionally equivalent" to a life sentence, it remains simply a term of months in its substantive effect. The "functional equivalent" of a life sentence exceeds the scope of protection Miller and Graham had intended to provide. Without further incidences of misconduct while he is in custody and serving his current federal sentence, Mr. Long is scheduled to be released at age 60, not kept in custody for the rest of his days. Additionally, the "without parole" provision as it is used in this context is misleading. There is no parole under the federal scheme; therefore, a life sentence (or any sentence) served in federal custody, by operation, does not include any possibility of parole. Federal sentences must be served for the entire period (less possible reductions for "good time") and after this period the individual is released. Although the petitioner's release date may seem as though it is far into the future, his hope of one day leaving the prison remains intact. More than hope, petitioner is guaranteed release at the conclusion of his sentence term, assuming no loss of good time credits. The state inmate serving a life sentence with scheduled parole hearings may have hope but does not have a guarantee.

There is no guarantee that the parole board will grant release. <u>Graham</u> states that a life sentence without parole for juvenile offenders violates the Eighth Amendment because "[a] sentence of life imprisonment, without parole, [. . .] cannot be justified by the goal of rehabilitation" and "improperly denies the juvenile offender a chance to demonstrate growth and maturity." <u>Graham</u> 73-74. <u>Graham</u> finds a violation of the Eighth Amendment because the life sentence "means denial of hope; it means that good behavior and character improvement are immaterial." <u>Id.</u> at 70. It must be emphasized that in federal custody the inmate need not demonstrate either growth or maturity and will still be released at the end of the sentence. Good time credits at the rate of 54 days per 12 months served are also available. The debt to society is considered paid whether or not the offender's experiences in federal prison manage to change him in any way. For this reason, a rehabilitation motive, or lack thereof, is irrelevant when applied to a federal sentence and should not be a reason to find a violation of the Eighth Amendment in the instant petition for relief.

In determining what circumstances trigger a violation of the Eighth Amendment, the United States Supreme Court has recognized that "[f]ederal jurisprudence in this area has not been exceedingly clear." *See* <u>Musser v. Mapes</u>, 854 F. Supp. 2d 652, 658 (S.D. Iowa 2012), *quoting* <u>Lockyer v. Andrade</u>, 538 U.S. 63 at 72. In <u>Lockyer</u>, the court acknowledged that "in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for the courts to follow." <u>Lockyer</u> at 72. The only clearly established principle was "the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." <u>Id.</u> at 73. The gross disproportionality principle is determined by substance, not terminology. Simply, the sentence must be proportional to the severity of the offender's criminal conduct. The petitioner's plea agreement stipulated that the sentencing guidelines were to be calculated according to his "Real Offense" conduct cross-referenced with the "Offense of Conviction." The probation officer recommended a guideline range of 360 months to life in the

7

presentence investigation report ("PSR") submitted to the court. The PSR was compiled based upon the Federal Sentencing Guidelines Handbook and facts gathered from reports and interviews. The petitioner signed the factual basis statement included in the PSR. At the sentencing hearing, this court considered and applied (without objection) the statements in the PSR to sentence the petitioner within the guidelines range. The guidelines range included the maximum penalty of a life sentence but the sentence imposed was for a term of months. The 540 month sentence proportionally reflected the seriousness of the offense.

At the sentence hearing, I fully considered all the statutory factors at 18 U.S.C. §3553. The sentence imposed was, at least in part, a result of plea bargaining to permit the defendant to *avoid* a life sentence. The defendant, although a young man, had been terrorizing the small town in which he lived. He committed crime after crime. He received great leniency from the tribal court, despite his terrible record. He was not required to attend school past the fourth grade. His mother was one of the most dysfunctional and irresponsible parents I have witnessed. She worked almost constantly to shield the defendant from responsibility for his terrible behavior. She helped enable the defendant.

The decedent here was a person with accomplishments and was well liked by the residents of her town. She was an excellent example to many young Native Americans. The defendant broke out a window of her home, gained access to her residence, burglarized the residence, and raped the decedent. He then stole her car and transported her, probably while she was still alive, to an isolated area in Western South Dakota many hundreds of miles from her home town. He then murdered her or at least dumped her body in a very isolated area, leaving her remains to wild animals. He was driving her car in Rapid City, South Dakota, when he was apprehended. He was in custody at all times before the sentence hearing. While in custody for the instant offense, he assaulted a jailer and escaped from a county jail, stole a vehicle, and led law enforcement officials on a high speed chase into North Dakota. He was prosecuted on a two-count indictment citing

8

the charges of escape and interstate transportation of a stolen vehicle in violation of 18 U.S.C. §§ 751(b) and 2132. On July 28, 2004, Mr. Long pleaded guilty to count II of the indictment (transportation of a stolen vehicle) and was sentenced on January 31, 2005, to 21 months imprisonment ordered to run consecutively to his previous federal sentence for aggravated sexual abuse. The Eighth Amendment rights of the petitioner have not been violated and relief must be denied.

Summary dismissal is therefore appropriate pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

Now, therefore,

IT IS ORDERED that the defendant's motion (Doc. 1) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is denied.

## TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT:

Petitioner pleaded guilty to aggravated sexual abuse in violation of 18 U.S.C. §§1153, 2241(a)(1) and 2246(2)(A). Petitioner filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 contending that his sentence was unconstitutional under the Eighth Amendment's Cruel and Unusual Punishment's Clause. I summarily denied the motion to vacate pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Petitioner did not and has not made a substantial showing of the denial of a constitutional right.

**IT IS HEREBY CERTIFIED** that there does not exist probable cause of an appealable issue with respect to the Court's order denying petitioner's § 2255 motion.

9

Any application for a certificate of appealability is denied. This in no way hampers the petitioner's ability to request issuance of the certificate by a circuit judge pursuant to Fed. R. App. P. 22.

Dated this 11th day of April, 2014.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST
JOSEPH HAAS, CLERK

BY_____
                    Deputy
      (SEAL)

10